UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CLARENCE EVANS,

                                        Plaintiff,                    **OPINION & ORDER**

            - against -                                               No. 24-CV-927 (CS)

C.O. ATKINS, *et al.*,

                                        Defendants.
------------------------------------------------------------x

<u>Appearances</u>:

Clarence Evans
Romulus, New York
*Pro Se Plaintiff*

Gabriel Cahn
Assistant Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

Before the Court is the motion to dismiss of Defendants Corrections Officer ("C.O.")
Corey Atkins, C.O. Kevin Wilson, C.O. Karla Demelo, Sergeant Nicole Bell, Sergeant Brett
Reed, Lieutenant Wayne Jordan, Director of Special Housing Anthony Rodriguez and Former
Deputy Superintendent William Sherman ("Defendants"). (ECF No. 53.) For the following
reasons, the motion is GRANTED.

## I.    **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's initial Complaint,
(ECF No. 1 ("Compl.")), Amended Complaint, (ECF No. 11 ("AC")), Second Amended
Complaint, (ECF No. 46 ("SAC")), memorandum in opposition to the motion, (ECF No. 63
("P's Opp.")), and letters to the Court, (ECF Nos. 48, 50, 52, 57, 58, 60, 62, 66, 67, 68). *See*

*Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *1 & n.5 (S.D.N.Y. Jan. 12, 2024) ("Because plaintiff is proceeding *pro se*, the Court considers new allegations in [his] opposition, to the extent they are consistent with the [second] amended complaint."); *Brown v. Twitter, Automattic Inc.*, No. 19-CV-6328, 2021 WL 3887611, at *6 n.8 (S.D.N.Y. Aug. 31, 2021) ("The Court will consider new factual allegations in Plaintiff's briefing where they are consistent with the operative pleadings."); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints."); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may consider facts from *pro se* plaintiff's original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."); *Brown v. Doe*, No. 13-CV-8409, 2014 WL 5461815, at *1 n.1 (S.D.N.Y. Oct. 28, 2014) (considering allegations that "appear in documents attached to the Complaint and in Plaintiff's subsequent letters to the Court" because "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint").[1]

---

[1] Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes. The Court will send Plaintiff copies of any unpublished decisions cited in this ruling. All citations to documents submitted by Plaintiff use the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

A.    **Facts**

On January 10, 2024, Plaintiff Clarence Evans, who was incarcerated at Sullivan
Correctional Facility ("Sullivan"), was returning to his cell from the law library when C.O.
Valentin Dzhegurov told Plaintiff that Dzhegurov did not want "none of the shit from the
morning on his shift."  (SAC at 6.)  Plaintiff told him he was good and to leave him in his cell.
(*Id.*)  Later that day, while C.O. Atkins was on rounds, Plaintiff told Atkins to lock him in his
cell for the night because he was not going out for chow.  (*Id.*)  Nevertheless, Plaintiff's cell was
opened at chow time.  (*Id.*)  Plaintiff left his cell to pick up his food tray.  (*Id.*)  At this point,
Plaintiff was approached by another inmate, with whom he apparently had had an issue during
the morning shift.  (*Id.*; AC at 6.)  When the inmate advanced, Plaintiff grabbed and held him.
(SAC at 6.)  C.O.s Atkins, Dzhegurov, and Kevin Knecht watched this interaction but just stood
there, allegedly waiting for a fight to begin.  (*Id.*)  C.O. Dzhegurov then "slammed" the other
inmate, and C.O. Atkins sprayed Plaintiff in the face, even though Plaintiff had his hands up.
(*Id.*)[2]  C.O. Atkins then wrote a false inmate misbehavior report ("MBR") stating that Plaintiff
and the other inmate were fighting and that Plaintiff threw closed-fist punches at the other
inmate.  (*Id.*)  Plaintiff alleges the officers set up the fight between Plaintiff and the other inmate
so that they would be able to assault and spray them, and that Atkins wrote the false report to
cover up his unjustified use of force.  (*Id.*)  Plaintiff filed a grievance about this incident.
(Compl. at 2.)

---

[2] The Court presumes Plaintiff is referring to oleoresin capsicum, or "O.C." spray, a
pepper spray used by corrections officers in facilities run by the New York State Department of
Corrections and Community Supervision ("DOCCS").  *See, e.g.*, *Brinson v. Curtin*, No. 18-CV-
7626, 2019 WL 4053908, at *1 n.2 (S.D.N.Y. Aug. 28, 2019).

After the altercation, Plaintiff was taken to the hospital, and while he was there, C.O. Thomas Walker opened his cell, resulting in others entering the cell and taking Plaintiff's personal property. (SAC at 6.) When Plaintiff returned from the hospital, he found a weapon in his cell. (*Id.*) Plaintiff informed C.O. Demelo, whose body worn camera was recording at the time, that he had found a weapon and asked for Sgt. Bell. (*Id.*) Demelo responded, "What the fuck you said you know you on video," and left. (*Id.*) Approximately five to ten minutes later, C.O. Wilson approached Plaintiff with other officers and ordered Plaintiff to put the weapon on the gate, which he did. (*Id.*) Plaintiff believes, perhaps based on a conversation he had with Sgt. Bell, that one of the officers planted the weapon in his cell. (*Id.*; Compl. at 1.)

The officers brought Plaintiff to Sgt. Bell's office where Sgt. Bell, Sgt. Reed, and more than seven other officers were present, causing Plaintiff to feel mental anguish because of an incident in his past that occurred when he was in the presence of that many officers. (SAC at 6-7.) In the office, Sgt. Reed expressed surprise that Plaintiff "did not think to flush [the weapon]." (*Id.* at 7.) Sgt. Bell then told the officers to put handcuffs on Plaintiff, stating that she did not want him loose. (*Id.*) Approximately fifteen minutes after the meeting, Plaintiff was put in a hospital room without lights, a shower or his property for three or four days. (Compl. at 2; AC at 6; SAC at 10.)

On or around January 18, 2024, Plaintiff had disciplinary hearings on two MBRs. (AC at 7; SAC at 8.) Lt. Jordan served as the hearing officer on the MBR written by Atkins that charged Plaintiff with violations of the following prison disciplinary rules: 100.13 for fighting, 104.11 for violent conduct, and 106.10 for refusing direct orders. (AC at 7; SAC at 8.) At the hearing, Atkins again stated that Plaintiff was throwing closed-fist punches at the other inmate,

(AC at 7; SAC at 8), but Lt. Jordan ultimately dismissed the MBR because body camera footage showed that Plaintiff did not throw any punches, (AC at 7; SAC at 8).

Plaintiff had another disciplinary hearing on an MBR written by Wilson, which charged Plaintiff with violations of prison disciplinary rules 113.10 for having a weapon and 113.23 for contraband.  (AC at 7.)  At the hearing, Defendant Sherman, who was assigned to be the hearing officer, (*id.*), read into the record that he had been called about the issue and thus was part of the investigation, (*id.* at 8; SAC at 8).  Plaintiff alleges that by presiding, Defendant Sherman violated DOCCS Directive 4932, (SAC at 8), which states that no one who has participated in the investigation of the charged acts shall serve as the hearing officer, *see* DOCCS Directive 4932 § X.A.2.  Sherman found Plaintiff not guilty of the violation of 113.23 for contraband, (AC at 8), but apparently found him guilty of having a weapon, as he sentenced Plaintiff to eight days pre-hearing confinement and fifty-two days post-hearing confinement in the Special Housing Unit ("SHU"), where he was kept away from the general population and did not have access to the commissary, phone, packages or programming, (*id.*; SAC at 10).  Plaintiff appealed the decision, (AC at 8), and Defendant Rodriguez modified the sentence to eight days pre-hearing and thirty-two days post-hearing confinement in the SHU, (*id.*; SAC at 9).  Plaintiff alleges that Rodriguez should have dismissed the MBR rather than modifying the disposition, and that his failure to do so violated Directive 4932, the "HALT law," and the "SHU Exclusion Law."  (AC at 8; SAC at 9.)[3]

---

[3] The latter two references seem to be to different subsections of the same New York State statute:  the Humane Alternatives to Long-Term Solitary Confinement Act.  *See* N.Y. Corr. Law § 137(6).  Plaintiff seems to refer to § 137(6)(i), which limits segregated confinement to fifteen consecutive days, and § 137(6)(d), which deals with segregation of inmates with serious mental illness and with mental health screening of inmates in segregation.

Finally, Plaintiff alleges that Lt. Jordan, Offender Rehabilitation Coordinator ("ORC") Hutchins, Captain Barlow, and Acting Superintendent John Doe 4 rubber-stamped a 2170 Special Housing Unit Custody Review form and said that Plaintiff needed to be placed in the SHU to prevent him from smuggling any further contraband or dangerous weapons into the facility, which he had not done.  (AC at 8; SAC at 8-9.)

### B.    Procedural History

On January 31, 2024, Plaintiff filed a *pro se* complaint, alleging his rights had been violated by officers in Sullivan because they:  (1) set up an inmate assault, (2) sprayed him, (3) failed to prevent his personal property from being stolen, (4) planted a weapon in his cell, (5) wrote false MBRs, (6) stole his mail, and (7) left him in a hospital room without lights or a shower for multiple days.  (Compl.)[4]  Plaintiff did not specify causes of action in his Complaint, but based on the facts alleged, and interpreting the Complaint to raise the strongest arguments it suggests, the Complaint asserts the following claims:  (1) excessive force with respect to the Defendants spraying Plaintiff; (2) failure to protect with respect to the inmate assault and failing to prevent his property from being stolen; (3) First Amendment retaliation with respect to planting the weapon in his cell, writing the false MBRs, and stealing his mail; (4) a separate First Amendment claim for mail interference; and (5) deliberate indifference and cruel and unusual punishment with respect to the conditions of his confinement.

On April 16, 2024, Plaintiff filed an Amended Complaint, naming as Defendants C.O. Atkins, John Doe Corrections Officers 1-3, Sgt. Bell, Sgt. Reed, C.O. Wilson, C.O. Demelo, Lt. Jordan, "ORC Hutchins," "A/DSS Barlow," "A/Superintendent Jane Doe 1 or John Doe 4"

---

[4] Plaintiff did not denominate his January 31, 2024 filing, which took the form of a letter, as a "Complaint," but it nevertheless constitutes a complaint.  *See* note 5 below.

("Acting Superintendent John Doe 4"), Rodriguez, and Sherman.  (AC.)  In the AC, Plaintiff

included the same allegations as the initial Complaint but provided more detail, and added

allegations that the disciplinary hearings on the MBRs were deficient and that his punishment

was in violation of the "HALT law" and "SHU exclusion law."  (*Id.*)  Liberally construed, the

Amended Complaint adds a cause of action for due process violations with respect to the conduct

of the disciplinary hearing and a cause of action under state law.

On June 24, 2024, the Court issued an Order of Service, directing the Clerk to issue

summonses for Defendants Atkins, Bell, Reed, Wilson, Demelo, Jordan, Rodriguez, and

Sherman; ordering the New York State Attorney General (the "AG") to identify the four John

Doe Defendants named in the AC; dismissing the claims against Hutchins, Barlow and Acting

Superintendent John Doe 4; and granting Plaintiff leave to amend to add facts in support of his

claims against those three Defendants.  (ECF No. 18.)  The Clerk issued summonses for the

Defendants on July 1, 2024, (*see* ECF No. 19), and they were served in August 2024, (*see* ECF

Nos. 26-37, 40).  On September 18, 2024, the AG identified three John Doe Defendants as C.O.s

Valentin Dzhegurov, Kevin Knecht, and Thomas Walker, but did not identify the fourth John

Doe Defendant as the Court had previously dismissed that individual.  (ECF No. 38.)

On October 21, 2024, Defendants Atkins, Bell, Wilson, Demelo, Jordan, Rodriguez, and

Sherman filed a pre-motion in letter in anticipation of their motion to dismiss Plaintiff's AC.

(ECF No. 43.)  On October 23, 2024, Plaintiff filed his Second Amended Complaint, asserting

claims against Defendants Atkins, Bell, Reed, Wilson, Demelo, Jordan, Rodriguez, Sherman,

Dzhegurov, Knecht, Walker, Hutchins, Barlow, and Acting Superintendent John Doe 4.  (SAC.)

The allegations in the SAC are largely the same as those in the AC, and thus, liberally construed,

the SAC asserts the same causes of action as the AC.  Defendants filed another letter on

November 5, 2024 stating their intention to move to dismiss the SAC for the same reasons as set forth in their October 21 pre-motion letter. (ECF No. 47.) On December 6, 2024, the Court held a pre-motion conference and set a schedule for Defendants' motion to dismiss. (*See* Minute Entry dated Dec. 6, 2024.) Defendants filed the instant motion on January 10, 2025. (ECF No. 53.) Defendants Dzhegurov, Knecht, Walker, Hutchins, Barlow, and Acting Superintendent John Doe 4 have not been served.

Plaintiff has also filed numerous letters with the Court since filing the SAC. The letters, among other things, allege that unidentified DOCCS employees have thrown out his mail and legal papers. (*See* ECF Nos. 50, 52.) Plaintiff also asserts in his letters that he has been "writing complaints and requesting to appeal complaints and grievance[s] from day one," but has not gotten replies. (ECF No. 58; *see* ECF No. 60 (stating he submitted a grievance); ECF No. 62 ("I[']ve been writting complaints, grievances and they w[ere] not submitted [*sic*].").) Finally, Plaintiff complains about issues with staff at Attica Correctional Facility and Five Points Correctional Facility, to which he was transferred during the pendency of this action. (*See, e.g.*, ECF Nos. 60, 62, 67.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

B. **Documents Properly Considered on a Motion to Dismiss**

Plaintiff attaches several documents to his opposition that were not attached to any of his complaints. (*See* P's Opp. at 4-7.) These documents include: (1) a letter to Mr. C. Proscia, the Inmate Grievance Resolution Committee ("IGRC") supervisor at Sullivan, dated September 11, 2024, regarding Plaintiff's grievances; (2) a grievance dated January 14, 2024, regarding the incident that occurred on January 10, 2024; (3) an IGRC Hearing Response dated January 29, 2024; and (4) Plaintiff's letter to the Freedom of Information Law ("FOIL") officer at Marcy Correctional Facility, dated March 28, 2024. (*See id.*)

On a motion to dismiss, a court is generally confined to the four corners of the complaint, the documents incorporated in or attached thereto, documents on which the Plaintiff relied in bringing the case, and things of which it is entitled to take judicial notice. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). But a court is permitted to consider outside documents related to exhaustion and submitted by defendants under limited circumstances. *See McGee v. McGready*, No. 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018). Those include instances where "the complaint a) was the standard *pro se* form complaint that has a check-box regarding exhaustion, b) contained allegations clearly stating that the inmate had exhausted his administrative remedies, or c) clearly pointed to the fact that the inmate had, in fact, not exhausted." *Id.*

Nevertheless, I do not have to determine whether any such circumstances are present here, because the documents related to exhaustion were not submitted by Defendants, but by Plaintiff. The Court may consider exhibits submitted by a *pro se* Plaintiff as part of his opposition to a motion to dismiss. *See Smith v. County of Westchester*, No. 17-CV-9858, 2019 WL 3006407, at *4 n.3 (S.D.N.Y. July 10, 2019) ("Because plaintiff is proceeding *pro se*, the Court properly considers exhibits to plaintiff's opposition brief for purposes of the motion to

10

dismiss."); *Milano v. Astrue*, No. 05-CV-6527, 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) (district court has discretion to consider supplemental statements and documents outside of the complaint when they are submitted by a *pro se* litigant). Typically, however, it is appropriate to consider documents outside the complaint, including those attached to a plaintiff's opposition papers, "to the extent that they are consistent with the allegations in the complaint." *Rivera v. Royce*, No. 19-CV-10425, 2021 WL 2413396, at *5 n.2 (S.D.N.Y. June 11, 2021).

Beginning with Plaintiff's grievance and the IGRC's response, Plaintiff states in his initial Complaint that he "file[d] a gr[i]evance for the officer lying and that they set [him] up to be assaulted when they should [have] stop[ped] it." (Compl. at 2.) He does not say when he filed the grievance and does not mention anything about the response in any of his complaints. Indeed, in the SAC, Plaintiff states he does not have the dates and times of when he appealed to Mr. Rodriguez, although this may have been a reference to the appeal from his disciplinary hearing. (SAC at 10.) Thus, the grievance and the IGRC's response are not inconsistent with the allegations in his complaints, and the Court will consider them. The other two documents, the letters to Mr. Proscia and to the FOIL officer, are likewise consistent with the allegations in the SAC, and thus the Court may consider those as well. But the outcome would be the same here even without considering the additional documents supplied by Plaintiff.

## III.    DISCUSSION

### A.    Failure to Exhaust Administrative Remedies

#### 1.    Excessive Force, Failure to Protect, Retaliation, Mail Interference, Deliberate Indifference and Cruel and Unusual Punishment

Defendants argue that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed his initial Complaint. (*See* ECF No. 54 ("Ds' Mem.") at 3-8.)

11

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of available administrative remedies "must be complete prior to commencement of suit" and "[t]he fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing."  *Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008).

"The administrative review process requiring exhaustion is defined not by the PLRA, but by the prison grievance process itself – that is, the rules of the particular institution where the inmate is housed govern any assessment of administrative exhaustion."  *Rodriguez v. City of N.Y.*, No. 21-CV-1384, 2023 WL 2368985, at *3 (S.D.N.Y. Mar. 6, 2023).  For inmates in New York State prison, administrative exhaustion involves compliance with DOCCS's three-tiered inmate grievance program, in which (1) the prisoner must file a grievance with the IGRC within twenty-one days of the alleged occurrence, (2) the prisoner must then appeal an adverse decision by the IGRC to the superintendent of the facility within seven days after receipt of the IGRC's response, and (3) the prisoner must then appeal an adverse decision by the superintendent to the Central Office Resolution Committee ("CORC") within seven days after receipt of the superintendent's response.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *McGee*, 2018 WL 2045094, at *2.  The program requires the IGRC to resolve the grievance or hold a hearing within sixteen days of its receipt, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(b); the

superintendent to respond to an appeal within twenty days, *id.* § 701.5(c)(3)(ii); and CORC to

respond to an appeal within thirty days, *id.* § 701.5(d)(3)(ii).  "[M]atters not decided within the

time limits may be appealed to the next step."  *Id.* § 701.6(g)(2).  Once CORC's thirty-day

deadline has elapsed, inmate-plaintiffs are deemed to have exhausted and are free to file suit.

*See Hayes v. Dahlke*, 976 F.3d 259, 270-71 (2d Cir. 2020) (prisoner will be considered to have

exhausted if CORC does not decide within thirty days).

    Exhaustion is an affirmative defense, not a pleading requirement, and thus inmate

plaintiffs need not "specially plead or demonstrate exhaustion in their complaints."  *Jones v.

Bock*, 549 U.S. 199, 216 (2007).  Instead, Defendants must demonstrate lack of exhaustion.  *See

Colón v. N.Y.S. Dep't of Corr. & Cmty. Supervision,* No. 15-CV-7432, 2017 WL 4157372, at *4

(S.D.N.Y. Sept. 15, 2017).  "[R]elief may be granted on a Rule 12(b)(6) motion only when

failure to exhaust appears on the face of the complaint."  *Jamiel v. Viveros*, No. 19-CV-1389,

2020 WL 1847566, at *3 (S.D.N.Y. Apr. 13, 2020); *accord Frederic v. NFC Amenity Mgmt.*, No.

17-CV-5769, 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018) ("[E]xhaustion is an

affirmative defense and as such can only be a proper basis for a motion to dismiss under Rule

12(b)(6) if failure to exhaust appears on the face of the complaint.").

    The documents Plaintiff submitted show that, at least with respect to the claims in the

initial Complaint, Plaintiff did not exhaust his administrative remedies before initiating this

action.[5]  Plaintiff's initial Complaint was received by the Court on January 31, 2024.  (Compl. at

---

[5] Although Plaintiff's initial submission to the court was in the form of a letter and not
captioned as a "Complaint," it nevertheless is properly considered as one.  In *Williams v. Walker*,
No. 07-CV-752, 2009 WL 545993 (E.D. Cal. Mar. 4, 2009), *report and recommendation
adopted*, 2009 WL 981383 (E.D. Cal. Apr. 10, 2009), the court considered whether, for purposes
of determining whether plaintiff had exhausted state remedies before filing suit, the action was
commenced by plaintiff's letter or his amended complaint, *see id.* at *7.  The court concluded
that the letter should be deemed a complaint because it contained various characteristics of a

complaint, including that it "describe[d] a series of actions taken against him, name[d] those responsible, and provide[d] the dates of several of the activities." *Id. Williams* cited *Pearson v. Gatto*, in which the Seventh Circuit held that the district court should have broadly construed a letter to be an amended complaint where plaintiff "'provided a complete factual summary of the events that constituted the basis for his suit, including names (as many as he knew), dates, and the facts constituting the basis of his claim.'" *Id.* at *6 (quoting *Pearson v. Gatto*, 933 F.2d 521, 527 (7th Cir. 1991)). Although not an exhaustion case, *Pearson* found a letter to be a complaint in the context of a challenge to the timeliness of an inmate's claim. *See id.* at *7. The *Williams* court also considered that the "plaintiff returned various documents relating to his action . . . before the amended complaint was filed and did not protest when each court referred to the letter as a complaint or assigned a case number to the document." *Id.* The court recognized that "liberal construction in this case would not aid the lay plaintiff, for it would result in a finding that he filed his action before he had completed the exhaustion of administrative remedies," but found that construing the letter as a complaint "would serve the purpose underlying the PLRA's exhaustion requirement." *Id.* It concluded that the letter was a complaint even though it had been addressed not just to a judge of the court, but also to a prison official, the FBI and the Legal Aid Society. *See id.* at 7-8.

Plaintiff's letter here, addressed only to the court, likewise contains the characteristics of a complaint, including that it described in detail the actions taken against him and provided the date of those actions. It did not name all the individuals he ultimately sued but did name two, and the others would be readily identifiable. He also sought relief from the Court, in the form of a Temporary Restraining Order ("TRO"). (ECF No. 1 at 1.) At least one court has found that "'motions for a temporary restraining order and a preliminary injunction and supporting affidavits and briefs – although not formally denominated a complaint, were adequate to advise [defendants] of the nature of the claim and the relief sought and to invoke jurisdiction of the court.'" *Williams*, 2009 WL 545993, at *5 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 742 n.5 (1975)). Further, Plaintiff filed letters with the Court before filing his amended complaint, and they do not contain objections to the court's characterization of his January 31 letter as his complaint. Indeed, one asks to "renew his complaint," (ECF No. 7), suggesting he recognized his January 31, 2024 letter as such. Further, according to the Court's notes, when the Court at the December 6, 2024 pre-motion conference explained that Defendants were arguing that Plaintiff had filed the lawsuit before exhausting, Plaintiff responded that he filed while in the process of filing grievances and that he was trying to get a TRO to get out of where he was being held. Unlike the Plaintiff in *Williams*, he did not contend that he did not intend the document to be a complaint.

Additionally, even if Plaintiff did not so intend, the letter is properly treated as a complaint. In *Mitchell v. Berry*, the court found that a "Notice of Intent to Sue" was an initial complaint, even though the plaintiff stated in that document that he was "waiting on the grievance system *before filing a civil action*" and that "each defendant is *going to be sued* individually and in their official capacity." No. 17-CV-962, 2018 WL 894784, at *1 (N.D. Fla. Jan. 18, 2018) (emphasis in original), *report and recommendation adopted*, 2018 WL 889479 (N.D. Fla. Feb. 14, 2018). Even though the plaintiff did not intend the notice as a complaint, the court found it had "brought" the case within the meaning of the PLRA. *See id.* at 2-3; *cf. Vaden v. Summerhill*, 449 F.3d 1047, 1048 (9th Cir. 2006) ("[T]he PLRA requires that a

1.)[6]  Plaintiff submitted his grievance on January 14, 2024, and the IGRC responded on January

29, 2024, just two days before the Court received the complaint.  (*See* P's Opp. at 5-6.)  Although

Plaintiff thus completed the first step in the grievance process before filing his complaint, the

documents do not show, and it is not possible, that Plaintiff completed the next two steps in the

process before initiating the action.  Accordingly, Plaintiff failed to exhaust his administrative

remedies.  *See Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 179 (S.D.N.Y. 2007) ("[A] claim must

be completely exhausted *prior* to commencing suit.  It is insufficient to take only limited steps

towards exhaustion before commencing the suit, or even to exhaust a claim entirely during the

pendency of the case.") (emphasis in original), *aff'd*, 278 F. App'x 27 (2d Cir. 2008).

Indeed, even if the Court did not consider these extrinsic documents, "the timeline

provides a separate, independent basis to conclude that Plaintiff failed to exhaust his

administrative remedies before bringing this action."  *Rivera*, 2021 WL 2413396, at *6.

"[C]ourts routinely dismiss claims as a matter of course when it would have been temporally

---

prisoner exhaust administrative remedies before submitting any papers to the federal courts.").
Here there is no indication that Plaintiff did not intend his letter-request to "bring" a lawsuit;
indeed, given that he sought a TRO, no other interpretation is reasonable.  Although his letter
requested a § 1983 form, that request followed the explanation that he was in the hospital
without his property, paperwork, etc., suggesting he was aware that his complaint was not in the
proper form, but not suggesting he did not seek relief from the court in substance.  Further,
treating the letter as a complaint serves the PLRA's goal of requiring exhaustion before involving
the court.  *See Porter*, 534 U.S. at 524-25.

Accordingly, the Court considers Plaintiff's January 31 letter as the initial Complaint.

[6] Under the "prison mailbox rule," an inmate's submission may be deemed filed on the
date he gives it to prison authorities for mailing.  *See Walker v. Jastremski*, 430 F.3d 560, 562
(2d Cir. 2005) (explaining prison mailbox rule); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)
(prison mailbox rule applies to *pro se* civil complaints), *modified on other grounds by* 25 F.3d 81
(2d Cir. 1994).  But that rule is intended to protect inmates, not disadvantage them, and thus does
not apply where, as here, the issue is whether the plaintiff filed before his administrative
remedies were exhausted.  *Fofana v. Moss*, No. 15-CV-188, 2016 WL 1237796, at *3-4
(N.D.N.Y. Mar. 4, 2016).

impossible for the plaintiffs to have exhausted their administrative remedies before filing the complaints." *Bonie v. Annucci*, No. 20-CV-640, 2023 WL 2711349, at *10 (S.D.N.Y. Mar. 30, 2023) (collecting cases). As already discussed, Plaintiff's initial Complaint was filed on January 31, 2024. The incident of which Plaintiff complained occurred on January 10, 2024, just twenty-one days earlier. (*See* Compl. at 1; AC at 6; SAC at 6.) "Plaintiff has not plausibly alleged he completed New York's three-step IGP program within [twenty-one] days." *Bonie*, 2023 WL 2711349, at *11; *see Rivera*, 2021 WL 2413396, at *6 (passage of sixteen days between incident and signing of initial complaint "precludes the possibility that Plaintiff could have exhausted his administrative remedies before filing this action" because "as a matter of fact and law, it simply would not have been possible for Plaintiff to do so"); *Price v. City of N.Y.*, No. 11-CV-6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (finding it clear from the face of the complaint that plaintiff failed to exhaust where only twenty-one days passed between alleged incident and filing of complaint). Thus, it is clear from the face of the complaint that Plaintiff had failed to exhaust at the time he initiated the action.

Nevertheless, courts must consider the PLRA's "textual exception to mandatory exhaustion" – that is, whether administrative remedies were "available" to the prisoner. *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court identified three circumstances where administrative remedies may be unavailable. *See id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, administrative remedies are

unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Defendants argue that Plaintiff cannot argue that the administrative process was unavailable to him because he has admitted that he filed grievances. (*See* Ds' Mem. at 7-8; ECF No. 65 ("Ds' Reply") at 6.) Plaintiff asserts that, at least for some grievances, he did not receive replies, (ECF No. 58 at 1), and that the facilities interfered with his grievances such that they were not submitted, (ECF No. 62 at 1; *see* P's Opp. at 4). But Plaintiff submitted with his opposition a response he received to his grievance regarding the January 10 incident. (P's Opp. at 6.) "That Plaintiff provides documentation demonstrating that he has successfully filed [a] grievance[], that [a] determination[ was] made, and that he received [a] response[] to his grievance[], undermines" any assertion that the administrative procedure was unavailable to him. *See Bonie*, 2023 WL 2711349, at *11. Rather, such "affirmative participation in the grievance process demonstrates that the grievance process is not a dead end." *Id.* at *12 (collecting cases); *cf. Smith v. Jaynes*, No. 18-CV-1107, 2022 WL 686627, at *3 (N.D.N.Y. Feb. 18, 2022) (first two exceptions did not apply where plaintiff fully exhausted grievances on other occasions), *report and recommendation adopted*, 2022 WL 685488 (N.D.N.Y. Mar. 8, 2022). And "[e]ven assuming Plaintiff has filed [other] grievances which have received no response, this alone is insufficient to show that the IGRP acted as a mere dead end, especially in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of [DOCCS's] failure to respond to a grievance." *Bonie*, 2023 WL 2711349, at *11. Further, Plaintiff does not argue that the administrative remedies were unavailable to him because of misrepresentation or intimidation, and his allegations that he filed multiple grievances, related to the January 10 incident or otherwise, (*see, e.g.*, P's Opp. at 4), show that

intimidation did not prevent him from using the grievance process, *see Bonie*, 2023 WL 2711349, at *12. Although Plaintiff alleges his mail was thrown out or not forwarded, that he received a response to his grievance undermines this assertion. *Id.* Accordingly, none of the exceptions are applicable here.

Finally, in a letter he sent to the Court after he filed the SAC, Plaintiff asserted that some of his grievances regarding this incident "went all the way." (ECF No. 48 at 2.) But even if Plaintiff completed the grievance process before filing the SAC, that would not save his claims, because it is clear that he did not do so before he filed his initial Complaint, and "a plaintiff must exhaust administrative remedies prior to commencing litigation. . . . Subsequent exhaustion after suit is filed is insufficient." *Bradshaw v. Piccolo*, 772 F. Supp. 3d 331, 346 (W.D.N.Y. 2025) (rejecting argument that plaintiff only needed to exhaust administrative remedies before he filed his second amended complaint). Because Plaintiff failed to exhaust his administrative remedies with respect to his excessive force, failure to protect, retaliation, mail interference, and deliberate indifference and cruel and unusual punishment claims, those claims must be dismissed.[7]

---

[7] To the extent that Plaintiff asserts claims of mail interference based on incidents that may have occurred after he filed his initial Complaint, (*see, e.g.*, SAC at 11 (claiming that plaintiff's right to receive his "mail and legal mail i[s] violated d[ail]y"); ECF No. 50 at 1 ("They throw out and hold my mail"); ECF No. 48 at 1 ("the state workers throwing out my mail legal and to my family"); *id.* at 2 ("My mail the State works been throwing out and holding from Marcy Corr. Fac. [*sic*].")), Plaintiff fails to plead the personal involvement of any of the named Defendants. As such, any claim of mail interference against any named Defendant is dismissed. *See Jones v. Sullivan*, No. 19-CV-25, 2020 WL 6529236, at *10 (N.D.N.Y. June 5, 2020) (dismissing First Amendment mail tampering claim due to failure to allege facts suggesting that defendants were personally involved); *Gomez v. Sepiol*, No. 11-CV-1017, 2014 WL 1575872, at *14 (W.D.N.Y. Apr. 11, 2014) (dismissing First Amendment claim against defendants where plaintiff failed to allege personal involvement in interference with plaintiff's mail).

### 2. Due Process

Defendants also argue that Plaintiff failed to exhaust his due process claims regarding his disciplinary hearing because Plaintiff failed to complete the appeals process prior to filing his Complaint.  (*See* Ds' Mem. at 5.)   Due process claims arising out of a disciplinary hearing are not subject to the same grievance process as other claims related to prison life.  *See Toliver v. Adner*, No. 18-CV-1420, 2019 WL 3503059, at *3 (N.D.N.Y. June 3, 2019) ("[T]he 'result' of the disciplinary hearing is not grievable because the disciplinary proceeding has its own appeal mechanism . . . .").  Rather, "a prisoner alleging due process violations in a disciplinary hearing exhausts his administrative remedies by directly appealing the hearing."  *Fox v. Cruz*, No. 22-2916, 2023 WL 7481423, at *2 (2d Cir. Nov. 13, 2023) (summary order); *see Kimbrough v. Fischer*, No. 13-CV-100, 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014) ("DOCCS has a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a 'grievance' process."); *Rosales v. Bennett*, 297 F. Supp. 2d 637, 639 (W.D.N.Y. Jan. 22, 2004) ("Where an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, on the other hand (*e.g.,* a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal.").

According to the SAC, at least one of Plaintiff's disciplinary hearings was held on January 18, 2024.  (*See* AC at 7.)[8]  It is unlikely that Plaintiff completed the administrative appeals process between that date and January 31, 2024, when he filed his initial Complaint.  But

---

[8] The Court cannot decipher with certainty the date that Plaintiff has written in the AC, but is reasonably sure that Plaintiff has written either January 14, 18 or 19, 2024.  The exact date of the hearing, however, does not affect my analysis.

Plaintiff did not mention the hearing in that complaint, and thus did not assert his due process claim at that time. The first time that Plaintiff asserts a due process claim with respect to the hearing is in his AC, filed on April 16, 2024. (AC at 1.) Thus, the question is not whether Plaintiff failed to exhaust that claim before he filed his initial Complaint, but rather before he filed his AC. *See Lopez v. Whitmore*, No. 13-CV-952, 2015 WL 4394604, at *7 (N.D.N.Y. July 16, 2015) (Plaintiff had exhausted administrative remedies with respect to due process claim where amended complaint was filed after administrative appeal was denied, and due process claim was asserted for first time in amended complaint); *Vann v. Fischer*, No. 11-CV-1958, 2014 WL 4188077, at *23 (S.D.N.Y. Aug. 25, 2014) (considering, with respect to incidents raised for the first time in amended complaint, whether plaintiff failed to exhaust administrative remedies before filing amended complaint), *reconsideration denied by* 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015); *see also Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *12 (E.D.N.Y. Nov. 16, 2020) (plaintiffs had exhausted administrative remedies on FTCA claim where claim had been asserted for the first time in amended complaint and claim had been properly exhausted by date of amended complaint).

As Defendants acknowledge, (Ds' Mem. at 6), Defendant Rodriguez modified Plaintiff's special housing confinement on appeal in February 2024, (AC at 8; *see* SAC at 9). Thus, it seems from this timeline that Plaintiff not only filed his appeal but had received a decision on it before he filed his AC in April. At the very least, it is not clear from the face of the AC or SAC that Plaintiff did not exhaust his administrative remedies before he asserted the due process claim with respect to his disciplinary hearings. Therefore, I decline to dismiss this claim for failure to exhaust administrative remedies.

B.    **Failure to State a Claim**

Defendants argue in the alternative that Plaintiff fails to state a due process claim in connection with his disciplinary hearing.  (Ds' Mem. at 11-13.)  Liberally construed, the SAC alleges that Plaintiff was deprived of his liberty interest in remaining free from confinement in the SHU unless afforded sufficient process at his disciplinary hearings.  Plaintiff seems to allege three ways in which he was denied due process in connection those hearings:  (1) C.O. Atkins testified falsely at his hearing in connection with the MBR that accused him of fighting with another inmate, (SAC at 8); (2) Defendant Sherman both participated in the investigation regarding Plaintiff's possession of a weapon and conducted the disciplinary hearing, (*id.*); and (3) Defendant Rodriguez failed to dismiss the MBR regarding Plaintiff's possession of a weapon, (*id.* at 9).

"To state a procedural due process claim, Plaintiff must show (1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process."  *McGriff v. Keyser*, No. 17-CV-7307, 2019 WL 6033421, at *4 (S.D.N.Y. Nov. 13, 2019).

1.    **Liberty Interest**

First, "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Allred v. Knowles*, No. 06-CV-456, 2010 WL 3911414, at *3 (W.D.N.Y. Oct. 5, 2010) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)).  "To determine whether the plaintiff endured an atypical and significant hardship, courts consider the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions as well as the duration of the segregated confinement."  *McGriff*, 2019

WL 6033421, at *4.  "[T]he Second Circuit has held that confinement for fewer than 101 days under 'normal' SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest." *Nieves v. Prack*, 172 F. Supp. 3d 647, 651 (W.D.N.Y. 2016).  Nevertheless, such a period of confinement could constitute atypical and significant hardship "if the conditions were more severe than normal SHU conditions." *McGriff*, 2019 WL 6033421, at *4.

Plaintiff was confined in the SHU for fewer than 101 days, as he was sentenced to eight days pre-hearing and fifty-two days post-hearing – later modified to thirty-two days post-hearing – in the SHU.  (SAC at 9-10.)  Thus, Plaintiff's liberty interest was only implicated by his confinement if the conditions were more severe than normal SHU conditions.  Plaintiff alleges that while he was in the SHU, he was prevented from contacting his family; did not have access to the commissary, phone, packages, and programming; and was not allowed in the general population.  (SAC at 10.)  These allegations do not amount to conditions that are more severe than normal, as "[i]t is to be expected that prisoners confined in the SHU will be deprived of certain privileges that prisoners in the general population enjoy." *Nieves*, 172 F. Supp. 3d at 652; *see Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) ("The temporary loss of the various privileges alleged in this case – *i.e.,* telephone, package, commissary, and recreation privileges – does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate.").  Accordingly, "the deprivation of such privileges does not create a liberty interest," *Nieves*, 172 F. Supp. 3d at 652, and Plaintiff fails to state a due process claim based on his confinement in the SHU.

To the extent that Plaintiff alleges the three or four days that he spent in a hospital room constituted abnormal conditions, Plaintiff also fails to plausibly plead a liberty interest.  Plaintiff

alleges he was kept in a room without lights or property and without a shower for more than

seventy-two hours.  (SAC at 10; AC at 6.)  In New York, under normal SHU conditions, an

inmate is:  "placed in a solitary confinement cell, kept in his cell for twenty-three hours a day,

permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and

denied various privileges available to general population prisoners."  *Lewis v. Murphy*, No. 12-

CV-268, 2014 WL 3729362, at *8 (N.D.N.Y. July 25, 2014).  Thus, that Plaintiff did not get to

shower for three or four days does not plausibly suggest that he was subject to more severe

conditions than normal.  Additionally, this Circuit has found that temporary deprivations of

showers for periods of up to approximately two weeks do not constitute abnormal conditions.

*See Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 734 (W.D.N.Y. 2015) (plaintiff plausibly

alleged abnormal conditions during his time in SHU such that he could sustain due process claim

where plaintiff alleged he was deprived of shower for more than two week timeframe found

acceptable in this Circuit); *cf. Baskerville v. Blot*, 224 F. Supp. 2d 723, 736-37 (S.D.N.Y. 2002)

(loss of shower privileges not unusual for keeplock confinement in New York prison system).

Further, although Plaintiff also alleges he was kept in the dark without his paperwork, property,

or a phone for those three or four days, (SAC at 10; AC at 6; Compl. at 2), such a deprivation

does not amount to an atypical and significant hardship, given the short duration of these

conditions.  *See Martinaj v. Uhler*, No. 18-CV-257, 2019 U.S. Dist. LEXIS 24896, at *22-26

(N.D.N.Y. Feb. 15, 2019) (considering relatively short confinement, complaint did not plausibly

suggest plaintiff endured dramatic departure from typical conditions in SHU even where plaintiff

alleged he was without soap or toiletries and other privileges for four days); *Stimpson v. Comm'r*

*Corr. Off.*, No. 16-CV-520, 2017 U.S. Dist. LEXIS 8743, at *18 (D. Conn. Jan. 23, 2017)

(allegations that plaintiff could not shower for four days and did not have access to items of personal property did not constitute a significant hardship) (collecting cases).[9]

### 2.    Sufficient Process

Even if Plaintiff had sufficiently alleged that he was deprived of a liberty interest, he would still fail to state a claim.  His allegation that C.O. Atkins violated his due process rights by making false statements at the disciplinary hearing arises out of Atkins's alleged conduct at the hearing rather than the procedure of the hearing.  *See McGriff v. Keyser*, No. 17-CV-7307, 2024 WL 3639103, at *5-6 (S.D.N.Y. Aug. 2, 2024).  Accordingly, Plaintiff could not have exhausted his administrative remedies by directly appealing the hearing, but had to separately grieve the issue.  *See id.*  It is not clear from the face of the AC – which, again, is the first complaint in which Plaintiff challenges his disciplinary hearings – whether Plaintiff filed a grievance on this issue or completed the three-step grievance process before filing the AC.  Nevertheless, even if Plaintiff exhausted his administrative remedies, a false disciplinary report or false testimony at a disciplinary hearing does not in itself give rise to a due process violation.  *See, e.g.*, *Brown v. Venettozzi*, No. 18-CV-2628, 2019 WL 4194432, at *5 (S.D.N.Y. Sept. 4, 2019) (false accusation or false testimony does not violate due process rights absent retaliation for protected activity or lack of due process at hearing).  Even if it did, Plaintiff would still fail to state a due process violation on this basis, because Plaintiff alleges that Defendant Jordan dismissed the MBR that

---

[9] To the extent that Plaintiff asserts a claim against Defendants Sherman, Rodriguez, Demelo, and Lt. Jordan, alleging that his continued confinement in the SHU violated the Eighth Amendment, (SAC at 8; AC at 8), "normal conditions of SHU confinement do not amount to an Eighth Amendment violation," *Hamilton v. Martucello*, No. 24-CV-6500, 2025 WL 713032, at *6 (W.D.N.Y. Mar. 5, 2025), and, as discussed above, Plaintiff has not alleged any abnormal conditions during his time in the SHU that would rise to the level of cruel and unusual, *see also infra* Section III.D (dismissing Eighth Amendment claim against unserved defendants on same grounds).

was the subject of the hearing.  (SAC at 8.)  Thus, the outcome of the hearing would not have

been different had Atkins not testified.  *See Purcelle v. Thomas*, No. 18-CV-77, 2020 WL

1516421, at *12 (N.D.N.Y. Mar. 6, 2020) ("[T]o establish a procedural due process claim in

connection with a prison disciplinary hearing, an inmate must show he was prejudiced by the

alleged procedural deficiencies, in the sense that the errors affected the outcome of the

hearing."); *Washington v. Fitzpatrick*, No. 20-CV-911, 2021 WL 966085, at *10 (S.D.N.Y. Mar.

15, 2021) (no due process violation where plaintiff could not establish prejudice from the

deficiency, as the missing evidence would not have affected outcome of hearing).  Accordingly,

Plaintiff fails to state a due process claim against Atkins based on his allegedly false testimony.[10]

Second, as to Plaintiff's claim that Defendant Sherman violated his due process rights,

Plaintiff was afforded constitutionally sufficient process in his disciplinary hearing.  That a

defendant both participates in an investigation and conducts the disciplinary hearing does not on

its own give rise to a cognizable due process violation.  *See Shabazz v. Bezio*, No. 10-CV-1212,

2014 WL 4794432, at *12 (N.D.N.Y. Sept. 25, 2014), *aff'd*, 669 F. App'x 592 (2d Cir. 2016)

(summary order); *Allred*, 2010 WL 3911414, at *5.  "Plaintiff's reliance on the DOCCS

regulation that precludes persons who have participated in any investigation of the underlying

acts from presiding over the hearing as a hearing officer is misplaced . . . [because] violations of

state law that do not deprive the plaintiff of a right secured by the Constitution and laws are

insufficient to support a claim under section 1983."  *Shabazz*, 2014 WL 4794432, at *13.

---

[10] While Atkins's alleged conduct does not amount to a due process violation in the
circumstances here, that does not mean it is acceptable.  Plaintiff alleges that Jordan dismissed
the MBR because body camera footage showed that Atkins lied in his report and testimony by
claiming that Plaintiff threw punches at the other inmate.  (AC at 7; SAC at 8.)  If Atkins indeed
lied, it is he who should be disciplined.  The Attorney General is directed to bring this footnote to
the attention of the appropriate authorities at DOCCS.

To the extent Plaintiff alleges that Defendant Sherman was not impartial, although an inmate is entitled to an impartial hearing officer, "disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allred*, 2010 WL 3911414, at *5. "A hearing officer may satisfy the standard of impartiality if there is *some evidence* in the record to support the findings of the hearing." *Id.* (emphasis in original). Plaintiff does not explain what evidence was presented at the hearing, but even if the hearing officer relied only upon the allegedly false MBR that was the subject of the hearing, he has satisfied the standard of impartiality, because "an inmate does not possess a due process right to be free from having a hearing officer rely upon an alleged false misbehavior report at a disciplinary hearing." *Cole v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-539, 2016 WL 5394752, at *20 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016); *see Chavez v. Gutwein*, No. 20-CV-342, 2021 WL 4248917, at *12 (S.D.N.Y. Sept. 17, 2021) (no right to be free from having false misbehavior report relied on at hearing). Thus, where a hearing officer relies on an MBR, courts have found that there existed some evidence to support the hearing officer's finding of guilt, even where the plaintiff alleges the report was false. *See, e.g.*, *Chavez*, 2021 WL 4248917, at *12 (collecting cases); *Canales v. Sheahan*, No. 12-CV-693, 2017 WL 1164462, at *9 (W.D.N.Y. Mar. 28, 2017) (allegation that hearing officer based determination on false misbehavior report was plainly insufficient to state procedural due process claim), *report and recommendation adopted*, 2018 WL 774335 (W.D.N.Y. Feb. 7, 2018); *see also Jenson v. Mullin*, No. 14-CV-1337, 2016 WL 5394744, at *4 (N.D.N.Y. Sept. 27, 2016) (although only evidence offered at hearing was misbehavior report prepared by sergeant, hearing record contained some evidence that supported guilty disposition). Plaintiff does not plausibly allege that Defendant Sherman otherwise prejudged the facts or

reached conclusions before seeing all the evidence, *see Allred*, 2010 WL 3911414, at *4, and

accordingly, Plaintiff's due process claim against Defendant Sherman must be dismissed.

Third, as to Defendant Rodriguez's affirming Defendant Sherman's decision, "[i]f a

disciplinary hearing does not violate an inmate's Fourteenth Amendment rights, then neither can

a supervisor's affirmance of the outcome of that hearing." *Jay v. Venetozzi*, No. 15-CV-147,

2020 WL 4382001, at *10 (W.D.N.Y. July 30, 2020) (collecting cases). Because Plaintiff has not

plausibly pleaded that a due process violation occurred in the disciplinary hearing, Defendant

Rodriguez affirming the hearing officer's decision does not violate due process. Additionally,

"[Rodriguez's] reduction of the sentence [Sherman] imposed . . . was a proper example of due

process." *Id.* Therefore, Plaintiff's due process claim against Defendant Rodriguez must also be

dismissed.

### C.    <u>Other Claims</u>

Liberally construed, the SAC raises state law claims against Defendants. Defendants do

not specifically address these claims in their motion to dismiss. Nonetheless, because these

claims implicate subject matter jurisdiction, the Court will consider them. *See Cyrus v. Lockheed

Martin Corp.*, No. 22-CV-4115, 2025 WL 964016, at *10 (E.D.N.Y. Mar. 31, 2025) ("[W]hen a

requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte*

issues that the parties have disclaimed or have not presented."), *reconsideration denied*, 2025

WL 1638056 (E.D.N.Y. May 9, 2025), *appeal docketed*, No. 25-1454 (2d Cir. June 9, 2025).

Plaintiff alleges that Defendants Sherman, Rodriguez, Demelo, and Lt. Jordan, along with

unserved Defendants ORC Hutchins, A/DSS or Captain Barlow, and Acting Superintendent John

Doe 4, violated the HALT Act. (*See* SAC at 7 ("Capt. Barlow as he is disciplinary and acting

DSS who[] [kept] me in SHU kn[e]w due process and the HALT law w[ere] being violated . . .

."); *id.* at 8 ("If th[ose] 4 [Hutchins, Jane or Acting Superintendent John Doe 4, Barlow, and

Demelo] w[ere] to follow the HALT law I w[ould have] been removed from SHU as I was no

threat to the safety of the facility . . . ."); AC at 8 ("[D]efendant A. Rodriguez knowingly only

modified when he should [have] dismissed for the violation of HALT law, Dir. 4932, and SHU

Exclusion Law.").)  The HALT Act provides:

> No person may be placed in segregated confinement for longer than necessary and
> no more than fifteen consecutive days.  Nor shall any person be placed in
> segregated confinement for more than twenty total days within any sixty day
> period except as otherwise provided in subparagraph (ii) of this paragraph.

N.Y. Corr. Law § 137(6)(i)(i) (Mar. 31, 2022).

The Court does not have jurisdiction over Plaintiff's state law claim.  "New York

Correction Law § 24, divests federal district courts of subject matter jurisdiction over state law

claims for money damages that are asserted against DOCCS employees who were acting in the

scope of their employment when the alleged violation occurred."  *Hamilton*, 2025 WL 713032, at

*6 n.4.  Section 24 "mandate[s] that state law claims for damages for acts or omissions

committed by DOCCS employees within the scope of their employment be brought exclusively

in the New York Court of Claims as claims against New York State."  *DeMeo v. Koenigsmann*,

No. 11-CV-7099, 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015); *see Hamilton*, 2025 WL

713032, at *6 n.4.  Thus, courts in this Circuit have held that they lack subject matter jurisdiction

over claims that DOCCS employees violated the HALT Act.  *See Coleman v. Wolcott*, No. 24-

CV-6182, 2025 WL 1695996, at *8 n.10 (W.D.N.Y. June 17, 2025) (court did not have

jurisdiction over state law claim alleging violation of HALT Act); *Hamilton*, 2025 WL 713032, at

*6 n.4 (same); *Woods v. Parks*, No. 24-CV-6347, 2024 WL 5247934, at *2 (W.D.N.Y. Dec. 30,

2024) (dismissing state law claims including claim that plaintiff's SHU confinement violated the

HALT Act for lack of subject matter jurisdiction pursuant to New York Correction Law § 24).

Because there is no suggestion here that any of the Defendants were acting outside the scope of their employment, Plaintiff's claim under the HALT Act must be dismissed.

Additionally, although Plaintiff does not mention the SHU Exclusion Law in the SAC, he asserted violations of the statute in his AC. (*See* AC at 8.) The SHU Exclusion Law provides:

> [T]he department, in consultation with mental health clinicians, shall divert or remove incarcerated individuals with serious mental illness . . . from segregated confinement or confinement in a residential rehabilitation unit, where such confinement could potentially be for a period in excess of thirty days, to a residential mental health treatment unit.
>
> . . .
>
> If an incarcerated individual with a serious mental illness is not diverted or removed to a residential mental health treatment unit, such incarcerated individual shall be diverted to a residential rehabilitation unit and reassessed by a mental health clinician within fourteen days of the initial assessment and at least once every fourteen days thereafter. After each such additional assessment, a recommendation as to whether such incarcerated individual should be removed from a residential rehabilitation unit shall be made and reviewed . . . .

N.Y. Corr. Law §§ 137(6)(d)(i)-(6)(d)(ii)(D) (Mar. 31, 2022). To the extent Plaintiff asserts a claim under the SHU Exclusion Law against Defendants Sherman and Rodriguez, (AC at 8), or a claim for violation of DOCCS Directive 4932,[11] the court does not have subject matter jurisdiction over that claim, for the same reasons it does not have jurisdiction over Plaintiff's claim under the HALT Act.

---

[11] Moreover, not only does "[a] violation of a state law or regulation, in and of itself . . . not give rise to liability under 42 U.S.C. § 1983," but "the violation of a DOCCS Directive, standing alone, is not a violation of any New York state law, statute, or regulation . . . because DOCCS directives are merely a system the Commissioner has established to assist him in exercising his discretion, which the Commissioner retains, despite any violation of these directives." *O'Diah v. Neth*, No. 10-CV-6592, 2013 WL 6440610, at *3 (W.D.N.Y. Dec. 9, 2013).

D.    **The Unserved Defendants**

Defendants argue that, although the Defendants that were added in the SAC – Walker, Dzhegurov, Knecht, Hutchins, Barlow, and Acting Superintendent John Doe 4, (collectively, the "unserved Defendants") – have not yet been served, the Court should, on its own motion, dismiss the action in its entirety because the shortcomings in the SAC apply equally to the unserved Defendants.  (*See* Ds' Mem. at 8 n.4; Ds' Reply at 1 n.1.)  A court may dismiss claims against defendants even when they have not been served or appeared in an action where a plaintiff's claims against them are futile.  *See Massey v. City of N.Y.*, No. 20-CV-5665, 2021 WL 4459459, at *4 (S.D.N.Y. Sept. 29, 2021), *aff'd*, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); *see also Moore v. Booth*, 122 F.4th 61, 68-69 (2d Cir. 2024) (court may *sua sponte* dismiss prisoner's complaint for failure to exhaust administrative remedies even before defendants are served as long as prisoner has notice and opportunity to respond).  Because Plaintiff had notice and an opportunity to respond, the Court will consider whether the claims against the unserved Defendants are futile.

Plaintiff asserts a claim against C.O. Walker for allegedly opening Plaintiff's cell and allowing others to enter and take Plaintiff's property while he was getting medical treatment for three or four days after the January 10 incident.  (SAC at 6-7.)  But because Plaintiff first raised that claim in his initial Complaint, (Compl. at 1), as discussed above, the Court can ascertain that Plaintiff could not have completed the three-step grievance process in the time between, say, January 15, 2024 and January 31, 2024, and thus he did not exhaust his administrative remedies as to this claim.  Similarly, although Plaintiff appears to assert failure to protect claims against C.O.s Dzhegurov and Knecht, (SAC at 6), Plaintiff raised the issue of the officers setting up a fight between Plaintiff and another inmate in his initial Complaint, (Compl. at 1).  Therefore, for

the reasons discussed above, Plaintiff has failed to exhaust his administrative remedies as to those claims as well.

Plaintiff's claims against Hutchins, Barlow, and Acting Superintendent John Doe 4, however, cannot be dismissed for failure to exhaust. Plaintiff raises a claim against these three Defendants for the first time in the AC and thus, as already discussed, he was required to exhaust his administrative remedies as to these claims before he filed the AC. *See Vann*, 2014 WL 4188077, at *23 (considering whether plaintiff failed to exhaust administrative remedies before filing amended complaint with respect to incidents raised for the first time in amended complaint). Because it is not clear from the face of the AC (or SAC) whether Plaintiff exhausted the grievance process before filing the AC, I cannot dismiss as to these three Defendants for failure to exhaust administrative remedies.

Nevertheless, as explained in my Order of Service dated June 24, 2024, (ECF No. 18), Plaintiff has failed to plead facts sufficient to state a plausible claim against Defendants Hutchins, Barlow, and Acting Superintendent John Doe 4. Plaintiff alleges that these defendants "allowed for [him] to be penalized for falsehoods and lies which violate[s] DOCCS policy, directive, guidelines, and law;" "lied on the document 2170 form saying that [he] must be prevent[ed] from doing what they say;" "wrote falsehoods and keep [him] in SHU [*sic*];" and "rubber stamped the 2170 [form] with falsehoods." (SAC at 10-11.) This is essentially what Plaintiff alleged in his due process claim, which I have found insufficient. Further, as noted, *see* note 11 above, claims that Defendants failed to comply with DOCCS directives or related regulations are not actionable, *see Jackson v. Annucci*, No. 20-CV-2008, 2021 WL 2581340, at *1 n.2 (S.D.N.Y. June 23, 2021).

Additionally, to the extent that Plaintiff intended to raise an Eighth Amendment claim against these three Defendants for their role in confining him to the SHU, that claim also fails. "To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, . . . a plaintiff must demonstrate that (1) the conditions of confinement resulted in unquestioned and serious deprivations of basic human needs, and (2) the defendants acted with deliberate indifference." *Bradshaw v. Marshal*, No. 21-CV-826, 2021 WL 11745345, at *12 (N.D.N.Y. Sept. 14, 2021). Plaintiff fails at the first step. "[N]ormal conditions of SHU confinement do not constitute an Eighth Amendment violation, and such confinement is not abnormal unless it is without penological justification, grossly disproportionate, or involving the unnecessary and wanton infliction of pain." *Id.* As previously discussed, Plaintiff does not allege that he suffered more than the normal incidents of SHU confinement. (SAC at 10 (alleging Defendants kept him in the SHU away from his "right to contact family . . . commissary, phone, packages, and things as for programs [*sic*].").) Thus, Plaintiff cannot state an Eighth Amendment claim on that basis. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (no Eighth Amendment violation where plaintiff had been cut off from prison population, religious services, legal research, medical showers, and personal property and had limits on food access in SHU). Further, because Plaintiff was found guilty of possessing a weapon at a disciplinary hearing, his punishment of fifty-two (later reduced to thirty-two) days in the SHU was penologically justified. *See id.*

Accordingly, the claims against Hutchins, Barlow, and Acting Superintendent John Doe 4 must be dismissed.

IV.    **LEAVE TO AMEND**

Finally, I consider whether Plaintiff should be granted leave to amend, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice. (*See* AC, SAC.) He has since had the benefit of two pre-motion letters from Defendants, (*see* ECF Nos. 43, 47), and the discussion at the December 6, 2024 pre-motion conference, (*see* Minute Entry dated Dec. 6, 2024), before he submitted additional documents that the Court has considered as supplements to the SAC, (*see* ECF Nos. 52, 57, 58, 60, 62, 66, 67, 68), and before he submitted his opposition, (ECF No. 63), the facts of which the Court has also taken as true.[12] Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.");

---

[12] The Court also considered as supplements two additional letters that Plaintiff submitted before the pre-motion conference. (*See* ECF Nos. 48, 50.)

*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying

leave to amend because "the plaintiffs have had two opportunities to cure the defects in their

complaints, including a procedure through which the plaintiffs were provided notice of defects in

the Consolidated Amended Complaint by the defendants and given a chance to amend their

Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended

complaint that would cure these pleading defects"), *aff'd sub nom*. *Bellikoff v. Eaton Vance*

*Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an

advisory opinion from the Court informing them of the deficiencies in the complaint and then an

opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at

*2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special

solicitude to *pro se* litigants requires only *one* . . .  opportunity to amend" and plaintiff "failed to

cure the defects despite having been given an adequate notice of them and a reasonable

opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin.,*

*Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary

order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend at least

three times and did not persuasively argue why a fourth amendment should be permitted);

*Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y.

Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple

opportunities to properly state his claims").

      Further, Plaintiff has not asked to amend again or otherwise suggested that he is in

possession of facts that would cure the deficiencies identified in this ruling.  *See Bank v.*

*Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order)

("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in

a manner which would survive dismissal, opportunity to replead is rightfully denied.");

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given

leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies

in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err

in dismissing claim with prejudice in absence of any indication plaintiff could or would provide

additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-

50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to

amend where there was no indication as to what might have been added to make the complaint

viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-

CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend

where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also*

*Todd v. Fields*, No. 20-CV-3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While

courts should be more lenient when considering a *pro se* party's motion to amend than when

considering that of a represented party, leave to amend is properly denied where all indications

are that the *pro se* plaintiff will be unable to state a valid claim.").

     Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*.

## V.    <u>CONCLUSION</u>

     For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 53), and close the case.

**SO ORDERED.**

Dated:  August 25, 2025
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.